In the Matter of Moe Goldstein, an Attorney, Respondent.

Third Department, March 12, 1927.

**Attorney and client — attorney disbarred in November, 1926, because of conduct in business transaction — on reargument, in view of attorney's previous good conduct, evidence of which did not appear on original argument, attorney is suspended for one year from date of original order — fact that transaction in question was not between attorneys or between attorney and client, is no defense.**

The respondent was disbarred in November, 1926, because of alleged reprehensible conduct in a single business transaction, showing want of moral sense and of honest and upright methods of dealing. On reargument, the additional affidavits show respondent's previous good character; that at the time of the disbarment proceeding he was in ill health and without advice or assistance of counsel; and that he had at all times, prior to the transaction in question, dealt with his clients in an honest and straightforward way. The court modifies the original order and directs that the respondent be suspended from practice for one year from the date of the original order.

It is no defense to the disciplinary proceeding that the transaction upon which it is based did not occur between attorneys or between an attorney and his client.

DISCIPLINARY proceeding instituted by the Broome County Bar Association.

*James S. Truman,* for the respondent.

PER CURIAM. For what appeared at the time to be good and sufficient reasons this court on November 11, 1926, granted an order disbarring Moe Goldstein, an attorney. (218 App. Div. 799.) There was no answer made by him to the charges preferred by the Broome County Bar Association, so there was no hearing ordered.

The charges did not relate to a professional act or to his duty to a client, but rather to his conduct toward a person with whom he engaged in a business transaction. It was characterized by trickery and fraud on his part. It showed a want of moral sense and of honest and upright methods of dealing to such an extent that we deemed him unworthy to be a member of an honorable

profession.   We believed he made the matter worse by lack of frankness in the affidavits and brief he submitted to this court.

At the January, 1927, term he was granted reargument on additional affidavits.   (219 App. Div. 749.)   Having examined them, with affidavits of clients and other citizens of Binghamton showing previous good character, we find some extenuation for his act, but not sufficient to constitute justification.   It appears also that at the time the proceedings to disbar were instituted and carried on he was suffering from the effects of an automobile accident and was in ill health and had no advice or assistance from counsel.   This may in a measure excuse what we have termed a lack of frankness on his part in the proceedings before this court.   He has been charged with but one isolated act of delinquency.   It appears that his dealings with his clients were at all times honest and straightforward. We think then that disbarment may be too drastic punishment to impose upon him under the circumstances, and wholesome purposes of discipline may be well served by modifying our former order to provide for suspension from practice for one year.

We have not overlooked a defense raised by respondent that the transaction was not between attorneys, or between an attorney and client, and in no manner in a professional capacity; therefore, not a matter for discipline.   This proposition overlooks the fact that to gain admission to the bar a good private character is required; to retain that position should require nothing less.   But we need not discuss the question; it has been decided by the Court of Appeals. In *Matter of Dolphin* (240 N. Y. 89, 92) that court said: " It is well and abundantly settled that an attorney may be disciplined for misconduct even though such misconduct was outside of and not a part of his professional acts."   (Citing authorities.   See, also, *Matter of Rouss*, 221 N. Y. 81.)

An admission to the bar is a privilege granted, not a right enforced. By passing the required law examination one is deemed to have the necessary learning and is eligible for admission to the bar, if he possesses the required private and professional character. The Appellate Division alone has the power to admit one to practice law in this State and upon it rests the responsibility, not only to see that those who are admitted are possessed of such character as fits them for admission to the profession, but also that they retain such character.   While the determination of the Appellate Division may be reviewed by the Court of Appeals, its " power of review is limited to the consideration of the single question whether the finding of guilt has any evidence to sustain it."   Where the evidence is conflicting it will refuse to determine on which side the truth lies, nor will it " revise the measure of punishment

which guilt, when adjudged, is to entail. In establishing the standard of conduct to which the bar must at its peril conform, the Appellate Division has a wide discretion, with which we have neither the wish nor the power to interfere. If the conduct condemned is not wholly blameless, the extent to which it shall be reprobated is not for our determination." (*Matter of Flannery*, 212 N. Y. 610, 611.) The determination of fitness for admission to the bar is a matter of discretion; an applicant is subject to tests of fitness before admission, and he is subject to the same tests after admission in order to retain his place at the bar. Judge CARDOZO said in *Matter of Rouss* (*supra*, 84): "Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards." In determining a case of this kind the court must recognize its responsibility. A lawyer is intrusted with the intimate affairs of his client's business, family matters, his property rights and his liberty. Generally men and women believe that an attorney, duly admitted to practice law, is worthy of their confidence and able to protect their interests. In their view a lawyer is a lawyer. The lawyer is an officer of the court. Confidence in the courts is one of the strong supports of government and of order in the State.

The prior order should be modified to provide that the respondent is suspended from practice from the date of the entry and service of a certified copy of the order to be entered herein until the 20th day of November, 1927, at which time, unless otherwise ordered, he may resume the practice of the law.

HINMAN, McCANN, DAVIS and WHITMYER, JJ., concur; VAN KIRK, Acting P. J., not voting.

Order herein is modified to provide that Moe Goldstein is suspended from practice from the date of the service of a certified copy of the order to be entered herein until the 20th day of Novembr, 1927, at which time, unless otherwise ordered, he may resume the practice of the law; and the said respondent, Moe Goldstein, is hereby commanded during said period to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another, and is hereby forbidden during such period to perform any of the following acts for compensation or reward, to wit, (1) to appear as an attorney or counselor at law before any court, judge, justice, board, commission or other public authority; (2) to give to another an opinion as to the law or its application, or any advice in relation thereto,