*In re* BLOCK.

1. Attorney and Client—Disbarment—Informal Hearing.

Denial of defendant lawyer's motion to dismiss disciplinary proceedings before State Bar grievance committee which led to his disbarment, where defendant did not have an informal hearing as required by State Bar rule on 2 allegations of misconduct which were added by amendment to the formal complaint after an informal hearing was held as to other allegations of misconduct and grievance committee found misconduct at the formal hearing principally on the added allegations, *held,* not reversible error, since it is unlikely that the same committee which found fault at the formal hearing and which would have conducted the informal hearing would not have found at the informal hearing sufficient cause to file a formal complaint, under State Bar rule providing that disciplinary proceedings shall not be held invalid by reason of nonprejudicial irregularity (State Bar Rule No 15, as amended).

2. Same—Commingling of Funds.

An attorney may not commingle a client's funds with his own nor may they be used by him (Canons of Professional Ethics No 11).

3. Same—Disbarment—Appellate Review.

Review of proceedings culminating in an order by a 3-judge court disbarring a lawyer is not *de novo,* but is in the nature of certiorari.

---

References for Points in Headnotes

[1]  7 Am Jur 2d, Attorneys at Law § 60 *et seq.*
[2]  7 Am Jur 2d, Attorneys at Law §§ 35, 36.
[3, 7, 8]  4 Am Jur 2d, Appeal and Error §§ 171, 391.
[4]  7 Am Jur 2d, Attorneys at Law §§ 66, 67.
[5, 6]  7 Am Jur 2d, Attorneys at Law § 13.
[9]  7 Am Jur 2d, Attorneys at Law § 16.
[10]  5 Am Jur 2d, Appeal and Error § 1009.

4. SAME—DISBARMENT—EVIDENCE.

Order of 3-judge court disciplining defendant lawyer for misappropriation of funds paid to him for clients in condemnation cases, *held*, proper, where 2 clients alleged they were unable to obtain their awards from defendant even though he had been given the money for them and in spite of their demands, and it was undisputed that various checks were drawn against the trust account in which their money had been deposited, but not for their benefit, and that at various times before the clients were paid, there was insufficient money from which they could have been paid.

5. SAME—DISCIPLINE.

Degrees of discipline of attorney must be dissociated from concept of punishment for wrongdoing (State Bar Rule No 15, § 16).

6. SAME—DISCIPLINE—UNETHICAL CONDUCT.

Discipline under the internal rules of the State Bar is not concerned necessarily with harm to the client, but rather with the professional conduct and ethics of the attorney in dealing with the client, and to preserve the integrity of the bar and the orderly and effective administration of justice (State Bar Rule No 15, § 16).

7. SAME—DISCIPLINE—APPELLATE REVIEW.

Review of disciplinary proceedings against lawyers for misconduct is not to review the exercise of judgment by the trial judge, but is to determine whether the discipline imposed is supported in the record and whether its effect is so harsh or gross that as a matter of law it cannot be found to be within the intent of the State Bar rules and clearly exceeds the authority extended by the legislature and Supreme Court.

8. SAME—DISBARMENT—APPEAL AND ERROR.

Permanent disbarment of defendant lawyer for misappropriation of funds paid to him for clients, *held*, proper, since Court of Appeals can only pass upon action below to determine if it was unjustified or unauthorized as a matter of law.

9. SAME—COMMINGLING CLIENTS' FUNDS—DISBARMENT—POWER OF CIRCUIT JUDGES.

Power exists in the 3-judge panel of circuit judges to disbar permanently lawyers for violations of the canons of professional ethics and, in particular, for commingling clients' trust funds with their own (Canons of Professional Ethics No 11).

10. COSTS—PUBLIC QUESTION—DISBARMENT PROCEEDINGS.
No costs are allowed on appeal in proceedings to disbar an attorney, a public question being involved.

Appeal from Kent; McDonald (Archie D.), Bebeau (Leo B.), and Corkin (Leo W.), JJ., presiding. Submitted Division 3 October 6, 1967, at Detroit. (Docket No. 2,622.) Decided March 21, 1968. Leave to appeal granted June 14, 1968. See 381 Mich 755.

Disbarment proceedings against Clem H. Block. Order of disbarment entered. Defendant appeals. Affirmed.

*F. William Hutchinson,* for State Bar of Michigan.

*Earl Waring Dunn,* for defendant.

J. H. GILLIS, J. This appeal concerns an interpretation of the rules of the State Bar of Michigan as promulgated by the Supreme Court pursuant to section 907 of the revised judicature act, being CLS 1961, § 600.907 (Stat Ann 1962 Rev § 27A.907). Respondent Clem H. Block, appellant, contends that the procedures which led to his disbarment were not in accord with those specified by our Supreme Court, and consequently, that the disbarment order should be held for naught. Further he contends that the alleged grounds of disbarment were not sufficiently aggravated to warrant his permanent disbarment.

These proceedings commenced with a request for investigation which was filed by the late State grievance administrator, J. Cameron Hall, on January 19, 1965. The action taken by the State Bar was based on information received by the grievance administrator relating to a number of estates in

Kent county probate court in which respondent was involved as either attorney, executor, or administrator, and wherein he was accused of causing unnecessary delays, among other irregularities. Another matter of alleged misappropriation of funds given for settlement of a client's case was also brought to the grievance administrator's attention at this time.

Rule 15, § 4 requires an attorney to respond in writing to a properly and timely filed request for investigation. Although respondent claims to have communicated with the grievance administrator by telephone, the record indicates that no written disclosure was made by respondent as required under section 4 of the above rule. A second request dated March 12, 1965 was sent to respondent and, again, no written disclosure was received in return. The matter was then referred to the grievance committee for the 5th congressional district (Rule 15, § 5).

On April 19, 1965 the grievance committee filed a formal complaint under Rule 15, § 8[1] restating the allegations contained in the prior requests for investigation. A hearing was set for May 4, 1965

---

[1] "If the grievance committee, or the chairman thereof, finds there is reasonable cause to believe that a formal hearing should be held, or if the respondent demands or the board orders a formal hearing, a formal complaint, setting forth the facts of the alleged misconduct shall be prepared by and subscribed with the name of counsel for the State Bar of Michigan to whom such matter is assigned. Such complaint may be signed by any grievance administrator, or by any commissioner of the State Bar of Michigan, and shall be filed with the grievance committee. Upon the filing of such complaint, it shall be the duty of the chairman of the grievance committee to fix the time and place for a formal hearing thereon, and to cause a written notice of such hearing, together with a copy of the formal complaint, to be served upon the respondent, in accordance with section 30 of this rule. The notice of hearing may be signed on behalf of the committee by the chairman or any member thereof. Formal hearings shall be held at the discretion of the chairman of the grievance committee within the congressional district or within the judicial circuit in which the alleged misconduct occurred, or within the congressional district or within the judicial circuit in which the respondent has, or last had, his office or residence. (See 369 Mich xxxv, xxxvi.)—REPORTER.

which, at respondent's request, was adjourned to June 22, 1965.

Subsequent to filing the formal complaint certain additional incidents involving alleged misconduct on the part of respondent were brought to the attention of the grievance committee. These allegations involved a misappropriation of funds paid to clients of respondent on 2 condemnation cases in which he was the attorney. The 2 clients alleged that they were unable to obtain their awards from respondent even though he had been given the money for them and in spite of their demands upon him.

The grievance committee referred these 2 new matters to the grievance administrator who, after investigation, made his report to the committee. As a result of the information disclosed by the administrator, the committee filed an amended formal complaint on June 1, 1965 which included the 2 additional allegations of misconduct. Respondent made formal answer to the amended complaint.

Hearings before the committee commenced on August 4, 1965 and various testimony and exhibits were received. Respondent participated in these hearings and, on the third day, he moved to dismiss the proceedings because the committee failed to conduct informal hearings on the 2 later allegations of misconduct prior to filing its formal amended complaint and the calling of formal hearings. The motion was denied by the committee on the grounds that: (1) the objection was procedural and respondent failed to make timely objection either in his answer or during the hearing; (2) Rule 15 does not require an informal hearing; and (3) that in fact an informal investigation was conducted on the later allegations prior to filing the amended formal complaint. Respondent claims, on this appeal, that the committee erred in denying this motion.

It should be noted at this point that respondent contends that if the 2 later matters were not properly before the committee, their effect by inclusion was highly prejudicial in swaying the minds of the committee members. Thus, we are not required to review the action taken, if any, based on the allegations in the original formal complaint, but rather whether the committee erred in hearing the later allegations and, if so, whether that constituted prejudicial error. Indeed, the State Bar, although it could have sought affirmance on the original allegations, chose to rely principally upon the later matters, thereby putting the committee's procedure squarely in issue.

Based on its findings and conclusions, the committee issued its report recommending disbarment. The report was certified by the committee chairman on February 1, 1966 and approved by the State Bar commissioner-at-large on March 3, 1966. The report was filed with the Kent county circuit court and an order was issued to respondent to show cause why an order for discipline should not issue (Rule 15, § 15, as amended April 10, 1964 and May 1, 1965). Pursuant to Rule 15, § 15, a panel of 3 circuit judges was appointed who, *en banc,* heard the return on the order to show cause on April 20, 1966. The circuit court panel found no reason to deviate from the certified findings of the grievance committee recommending disbarment and directed that an order to discipline be presented in accordance therewith.

After a 20-day stay of entry of the order at the request of respondent, the panel entered its order of permanent disbarment. Respondent filed a motion for rehearing before the circuit judges alleging again the impropriety of the procedures followed by the committee, in particular, in failing to conduct an informal hearing prior to the issuance of the

formal complaint on the 2 later allegations of misconduct. The motion for rehearing was denied. The written opinion of the circuit judges, after setting forth substantially the facts which we have thus far related, stated:

"Rule 34 provides that 'Process and procedure under these rules shall be as summary as may be reasonable. No investigation or proceedings hereunder shall be held invalid by reason of any nonprejudicial irregularity, nor for any error not resulting in a miscarriage of justice.'

"It would appear that, had the respondent considered that there was a miscarriage of justice because of an irregularity in the grievance procedure, that such complaint could not [sic] have been included in the answer filed by the respondent to the amended complaint, or at least prior to hearing before the grievance committee.

"It appears that the respondent, at the time of the commencement of the hearing by the grievance committee, was willing to take his chances on the proofs that would be submitted, and having done so and being dissatisfied with the results he now seeks a rehearing on the issues involved in the Nordhoff and Liskiewicz matters.

"At the hearing held by this court the record will show that most of the matters now contained in the motion for a rehearing were argued by counsel for the respondent and the State Bar."

Rule 15, § 34 (a portion of which was quoted by the circuit judges) provides in pertinent portion:

"Process and procedure under these rules shall be as summary as may be reasonable. No investigation or proceedings hereunder shall be held invalid by reason of any nonprejudicial irregularity, nor for any error not resulting in a miscarriage of justice. The provisions in the various sections of this rule and of rule 14 shall be liberally construed

for the protection of the public, the courts and the legal profession, and shall apply to all pending matters of misconduct and reinstatement so far as may be practicable, and to all future matters notwithstanding the alleged misconduct occurred prior to the effective date hereof. To the extent that application of any provision in this rule to any pending matter shall not be practicable, the rules in effect at the time this rule becomes effective shall continue to apply."

Respondent is thus placed in the untenable position of urging a technical reading of the rule which flouts the construction dictated by the Supreme Court. Even assuming that such a technical reading would require an informal hearing, respondent is placed in the position of having been found at fault at the formal hearing after due notice and opportunity to be heard. The prejudice he claims, therefore, in its simplest terms, is that he might have been exonerated at an informal hearing. We cannot accept this proposition. An informal hearing would be held before the same committee. On an informal hearing, the committee need not find fault but need only find sufficient cause to file its formal complaint for a formal hearing. It is too unlikely to be other than mere conjecture that the same committee which found fault in the formal hearing would, on an informal hearing, have found no cause to issue its formal complaint.

The construction of these rules has been dictated by the Supreme Court. It is explicit in the portion of section 34, quoted above, that the procedures followed shall not be held invalid by reason of any nonprejudicial error nor error not resulting in a miscarriage of justice. Respondent is unable to point out, nor are we able to find any such prejudice or miscarriage of justice, and for this reason we

find that the alleged failure to hold an informal hearing does not constitute reversible error.

The argument as to the merits of the disbarment have, in the briefs, been limited to what we have been referring to as the 2 later cases. These cases both involved money paid to respondent on behalf of his clients resulting from condemnation settlements. Respondent deposited the money in his trust account held in his own name. It is undisputed that various checks were drawn against this account not for the benefit of the clients and that at various times before the clients were paid, there were insufficient funds from which the clients' awards could have been paid.

Cases cited by appellant from other jurisdictions and text statements as to grounds for disbarment shed little light on the standards for the practice of law in Michigan. Canon 11 of the Canons of Professional Ethics prohibits a commingling by an attorney of a client's funds with his own and the use of those funds by the attorney.[2] Whether another jurisdiction might impose the same limitation or consider such action as ground for discipline is immaterial. Our review under the rules regarding the State Bar is not *de novo* (*In re Estes* [1959], 355 Mich 411, 424) and on review of the records and briefs we find that there was evidence warranting disciplinary action and the order for discipline of the 3-judge panel.

The remaining, and most difficult question is whether an order of permanent disbarment was justified under the circumstances of this case and

---

[2] "The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

upon the allegations made and proven. In order to evaluate the appropriateness of the discipline imposed in this case, it is necessary to understand the nature and purpose of discipline in such a proceeding.

Degrees of discipline must be dissociated from the concept of punishment for wrongdoing, Rule 15, § 16. Discipline is to be administered as a measure for the protection of the bench, bar, and public, *In re Mains* (1899), 121 Mich 603. Discipline, it goes without saying, must be such as is necessary in preserving the integrity of the bar and the orderly and effective administration of justice in this State. Discipline under the internal rules of the State Bar is not concerned necessarily with harm to the client, but rather with the professional conduct and ethics of the attorney in dealing with the client. *Attorney General* v. *Lane* (1932), 259 Mich 283. Thus, as the Supreme Court states in Rule 15, § 16, the degree of discipline should be fixed with consideration of the seriousness of the misconduct, as it dictates the measures necessary to protect the bar, bench, and public.

What role is this Court to play in assessing the severity of such discipline? We cannot, on our review, enter our own judgment based on what we would have done as we might on a *de novo* review. See *Attorney General* v. *Lane, supra.* It is not for us to determine whether we would have imposed lighter or harsher discipline than that imposed in any given case. We think our proper function is not to review the exercise of judgment by the trial court, but to review that judgment from a legal viewpoint as to whether it is supported in the record and whether its effect is so harsh or gross that, as a matter of law, it cannot be found to be within the intent of the rules and clearly exceeds the authority extended by the legislature and Supreme

Court as the originators. See *Attorney General* v. *Burns* (1936), 276 Mich 351.

We cannot say in this case that the permanent disbarment of respondent was unjustified or unauthorized as a matter of law. There is no question that it is harsh, but that alone does not constitute ground for reversal. Nor can we intercede on a mere belief that had we decided the matter we would not have been inclined to as harsh a disciplinary measure.

In only one case which we have found did the Supreme Court express itself on the extent of the discipline imposed in a disbarment proceeding. *In re Emmons* (1947), 316 Mich 674. That case, like the present, involved self-dealings with client's funds held in trust by the attorney. The 3-judge circuit panel ordered disbarment and, on appeal, 4 justices voted to affirm that order. The opinion for affirmance stated at p 693:

"The course of misconduct charged against defendant was not inadvertent. Instead it was deliberate and continued over a long course of years. The disciplinary order is not without precedent in this jurisdiction. See *In re Radford*, 168 Mich 474, and *In re Hartford*, 282 Mich 124. As was said of the defendant in the *Hartford Case* so it might well be said of defendant in the instant case.

" 'His actions exhibit a gross disregard of the obligations imposed upon him by virtue of his status as an attorney and officer of the court, and are not compatible with the attitude and sense of moral responsibility which must be possessed by those with whom the administration of justice is entrusted if the respect and dignity of the courts is to be maintained.' "

Emmons at least establishes that the power exists in the circuit judges to permanently disbar for violation of the Canons of Professional Ethics and, in

particular, for commingling of clients' trust funds. Finding no error in the procedures followed, the judgment, so entered, is, affirmed. No costs, a public question being involved.

LESINSKI, C. J., and T. G. KAVANAGH, J., concurred.